UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**BEHZAD BAGHERIAN, et al.,**

    Plaintiffs,

    v.

**MICHAEL R. POMPEO, in his official capacity as U.S. Secretary of State, et al.,**

    Defendants.

Civil No. 19-1049 (JDB)

## MEMORANDUM OPINION

Plaintiffs Behzad Bagherian and Faezeh Abbasi brought this action against the U.S. government and various U.S. officials, seeking to compel the government under the Administrative Procedure Act ("APA") or the Mandamus Act to adjudicate Abbasi's visa application. Now before the Court is the government's motion to dismiss. For the reasons explained below, the Court will grant the motion and dismiss the case.

### Background[1]

Bagherian is a U.S. citizen residing in Colorado. Petition for Writ of Mandamus ("Compl.") [ECF No. 1] ¶ 8. He is engaged to Abbasi, an Iranian national. Id. ¶¶ 2, 8. The couple wish to get married in, and then live together in, the United States. Id. ¶ 6, 36–37. On August 19, 2016, Bagherian filed a petition for a K-1 visa on behalf of Abbasi. Id. ¶¶ 1–2. Otherwise known as "fiancée visas," K-1 visas are available—if certain requirements are met—to aliens who intend to marry a U.S. citizen within 90 days of arrival in the United States. Visas for Fiancé(e)s of U.S. Citizens ("Visa Procedures"), https://www.uscis.gov/family/family-us-citizens/visas-fiancees-us-

---

[1] The relevant facts are drawn from plaintiffs' complaint and are assumed to be true for purposes of the motion to dismiss.

1

citizens. Filing a petition is just the first step in the lengthy, multistep K-1 visa process. The government must then approve the petition and send the application on to the National Visa Center ("NVC"), at which point the application is forwarded to the U.S. embassy or consulate where the alien fiancé(e) lives. Id. A consular officer in that office is responsible for interviewing the alien fiancé(e), reviewing the relevant documents, and requesting a background check. Id. If approved by the officer, a visa is issued to the alien fiancé(e). Id. He or she may then enter the United States and must marry the U.S. citizen indicated in the initial petition within 90 days of entry. Id.

Abbasi made it past the first several steps in this process: her petition was approved and forwarded on to the U.S. Embassy in Yerevan, Armenia, and a consular officer there interviewed her on November 29, 2016. Compl. ¶¶ 16–17. But she then entered a limbo period. After her interview, the officer informed her that her "visa application is temporarily refused under section 221(g) of the US Immigration and Nationality Act," pending the completion of administrative processing. Id. ¶ 17. Between November 2016 and December 2017, Bagherian reached out to the embassy at least five times, and even enlisted the help of a U.S. Senator from Colorado. Id. ¶¶ 19–25. Each time, the embassy informed Bagherian (and the Senator) that the case was "pending administrative processing." Id.

While Abbasi and Bagherian were waiting to hear from the Embassy, on September 24, 2017, President Trump issued Presidential Proclamation 9645. See 82 Fed. Reg. 45,161 (Sept. 24, 2017). Among other things, Proclamation 9645 barred entry into the United States of nationals from seven countries, including Iran, except as "subject to categorical exceptions and case-by-case waivers." Id. § 2. The Proclamation also established a waiver mechanism whereby consular officers may grant waivers to a foreign national if (and only if) the foreign national demonstrates that (1) "denying entry would cause the foreign national undue hardship"; (2) "entry would not

pose a threat to the national security or public safety of the United States"; and (3) "entry would be in the national interest." Id. § 3(c). The President derived his authority to issue the Proclamation from the Immigration and Nationality Act, which affords presidents broad discretion to "suspend the entry of all aliens or any class of aliens" if they deem such a suspension to be in "the interests of the United States." See 8 U.S.C. § 1182(f); see also 82 Fed. Reg. at 45,161. The Proclamation was challenged in federal court, but its validity was ultimately upheld by the Supreme Court in Trump v. Hawaii, 138 S. Ct. 2392, 2423 (2018).

On January 4, 2018, the Embassy emailed Abbasi and informed her that "a consular officer found [her] ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 9645." Compl. ¶ 26. The email also noted that the officer was "reviewing [her] eligibility for a waiver," but that her visa application would "remain refused" until the waiver process was complete. Ex. G to Pls.' Resp. in Opp'n to Mot. to Dismiss ("Pls.' Opp'n") [ECF No. 15-8] at 3.

Twice more thereafter, on April 10, 2018, and May 21, 2018, the Embassy emailed Abbasi asking for additional information regarding her eligibility for a waiver, including her original birth certificate and responses to a detailed questionnaire about her travel history and family. Compl. ¶¶ 28, 30. The May 21st email stated that the request was made "[a]s part of [Abbasi's] administrative processing." Ex. J to Pls.' Opp'n [ECF No. 15-11] at 2. Bagherian continued to reach out to the Embassy for status updates but was told only that "[a] consular officer is currently reviewing your case for eligibility for a waiver." Ex. L to Pls.' Opp'n [ECF No. 15-13] at 2. Throughout this period, the State Department's website stated that Abbasi's "immigrant visa application" was "currently undergoing necessary administrative processing." Ex. M to Pls.' Opp'n [ECF No. 15-14] at 2.

On April 14, 2019, about 28 months after Abbasi's interview at the U.S. Embassy and 15 months after Abbasi began being considered for a waiver, she filed this suit. She seeks a declaratory judgment under the APA directing the government to "complete administrative processing and render a decision on Plaintiffs' visa petition." Compl. ¶ 53. Alternatively, she seeks a writ of mandamus compelling the government to "issue a final decision." Id. ¶ 47. The government has moved to dismiss, arguing under Federal Rule of Civil Procedure 12(b)(1) that this Court lacks subject matter jurisdiction and under Rule 12(b)(6) that Abbasi has failed to state a claim.

## Discussion

### I. Legal Standard

When reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted). "The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." Didban v. Pompeo, 2020 WL 224517, at *3 (D.D.C. Jan. 15, 2020) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The complaint "must provide more than labels and conclusions; although it does not need detailed factual allegations, the factual allegations must be enough to raise a right to relief above the

speculative level." Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec., 892 F.3d 332, 343 (D.C. Cir. 2018) (internal quotation marks omitted).

II. Analysis

    A. Jurisdiction

The government argues that this Court lacks subject matter jurisdiction over Abbasi's suit, citing both the consular non-reviewability doctrine[2] and mootness. Neither jurisdictional bar applies here.

The doctrine of consular non-reviewability "holds that a consular official's decision to issue or withhold a visa is not subject to judicial review." Saavedra Bruno v. Albright, 197 F.3d 1153, 1159 (D.C. Cir. 1999). In other words, "[c]onsular officers have complete discretion over issuance and revocation of visas," id. at 1158 n.2, "even where it is alleged that the consular officer failed to follow regulations, where the applicant challenges the validity of the regulations on which the decision was based, or where the decision is alleged to have been based on a factual or legal error," Chun v. Powell, 223 F. Supp. 2d 204, 206 (D.D.C. 2002) (internal citations omitted).

The government contends that the doctrine bars this Court from reviewing the consular officer's decision, on January 4, 2018, to refuse Abbasi's visa application. See Decl. of Chloe Dybdahl [ECF No. 14-1] ¶ 6. True enough. However, Abbasi is not seeking review of that decision. Indeed, she is not seeking review of any decisions at all. Instead, she seeks review of the government's failure to adjudicate her waiver eligibility—the failure to make a decision— within a reasonable time.[3] The government itself acknowledges that "Abbasi is undergoing

---

[2] As another court in this district recently pointed out, "[t]here is some ambiguity as to whether the doctrine of consular non-reviewability" is technically a matter of jurisdiction or is instead more properly classified as a merits matter. Didban, 2020 WL 224517, at *3 n.2. Here, because the Court concludes that the doctrine does not apply, there is no need to wade into this debate.

[3] Although her complaint and briefing often frame Abbasi's requested relief as adjudication of her visa application, the Court thinks it abundantly clear from context that what Abbasi is really seeking is adjudication of her waiver eligibility. Abbasi does not dispute that the State Department "denied" her initial visa application on January

consideration for a waiver of the Proclamation's entry restrictions." Id. ¶ 7. The doctrine of consular non-reviewability is therefore inapplicable to this action, because the doctrine "is not triggered until a consular officer has made a decision with respect to a particular visa application." Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry, 168 F. Supp. 3d 268, 290 (D.D.C. 2016). At least five other district courts in recent months have reached the same conclusion in similar cases involving the government's failure to adjudicate waiver eligibility under Presidential Proclamation 9645. See Moghaddam v. Pompeo, 2020 WL 364839, at *5 (D.D.C. Jan. 22, 2020) (rejecting applicability of doctrine where "[p]laintiffs d[id] not challenge the initial denial of [a plaintiff's] visa application," but instead sought adjudication of plaintiff's "waiver, which clearly remains pending and has not been denied"); Didban, 2020 WL 224517, at *4 (same); Motaghedi v. Pompeo, 2020 WL 207155, at *7–8 (E.D. Cal. Jan. 14, 2020) (same); Najafi v. Pompeo, 2019 WL 6612222, at *5 (N.D. Cal. Dec. 5, 2019) (same); Yavari v. Pompeo, 2019 WL 6720995, at *3–4 (C.D. Cal. Oct. 10, 2019) (concluding that doctrine applied only to initial refusal decision and not to consular officer's subsequent failure to adjudicate waiver application).

The government also contends that the case is moot because "Abbasi's visa application was denied," and if the Court were to issue an order "direct[ing] the government to issue a 'final decision' on the visa application, the government would immediately comply with that order by denying the visa application once again." Reply in Further Supp. of Defs.' Mot. to Dismiss

---

4, 2018. However, she points out that in that very same denial email, the Department informed her that it was "reviewing [her] eligibility for a waiver." Ex. G at 3. Thereafter, the State Department's website listed her case status as "currently undergoing necessary administrative processing," Ex. M at 2, and the Department's emails described her case as in "administrative processing," Ex. J at 2. Adjudication of her waiver eligibility is all that remains for the Department to do, and review of the Department's failure to do so is all that Abbasi seeks. Cf. Moghaddam v. Pompeo, 2020 WL 364839, at *5 (D.D.C. Jan. 22, 2020) (construing plaintiff's request for adjudication of her visa application as a request for adjudication of her "waiver eligibility, which [she] view[ed] as part of the overall visa application process").

6

("Gov't's Reply") [ECF No. 17-1] at 6–7. However, this argument once again misunderstands Abbasi's claims. She is seeking an order that the government must adjudicate her waiver eligibility—an adjudication that in her view has been unreasonably delayed. A case is moot only "if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." Am. Bar. Ass'n v. FTC, 636 F.3d 641, 645 (D.C. Cir. 2011). Here, an order from the Court directing the government to adjudicate Abbasi's waiver eligibility has a "more than speculative chance of affecting her legal rights." Didban, 2020 WL 224517, at *4. The case is not moot.

### B. APA Claim

Abbasi's first claim is that the government's delay in adjudicating her waiver eligibility violates the APA. Compl. ¶ 51. The APA requires agencies to "conclude" matters presented to them "within a reasonable time." 5 U.S.C. § 555(b)). If an agency fails to do so, the APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." Id. § 706(1). Notably, and as relevant here, the APA excludes from judicial review "agency action [that] is committed to agency discretion by law." Id. § 701(a)(2). In response to Abbasi's APA claim, the government argues first that the "waiver program is governed entirely by the Proclamation (which is presidential action that is allegedly not subject to the APA)," and second that "the pace of adjudicating waiver applications is committed to agency discretion." Didban, 2020 WL 224517, at *5; see Mem in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mot. to Dismiss") [ECF No. 14] at 8–9. The thrust of these arguments is that the government's actions implementing the Proclamation are not subject to judicial review. The government also contends, in the alternative, that even if its actions here are reviewable, on the merits, plaintiffs have failed to "state[] any claim under the APA for allegedly unreasonable delay." Gov't's Reply at 8.

Whether the government's failure to adjudicate Abbasi's waiver eligibility is reviewable under the APA—put somewhat more abstractly, whether government action or inaction taken pursuant to a presidential proclamation is reviewable under the APA, given that the President's actions are "not subject" to the APA's requirements, Franklin v. Mass., 505 U.S. 788, 801 (1992)—is a complex legal question for which there is not clear D.C. Circuit precedent. See Moghaddam, 2020 WL 364839, at *10 (noting that "this circuit has not clearly determined whether action taken pursuant to the Proclamation is reviewable" and relying on Ninth Circuit precedent to conclude that such action is reviewable). But the Court need not resolve that question. Even if the government's failure to act is reviewable under the APA, the Court concludes that Abbasi has failed to state a claim because the roughly twenty-five-month delay to this point in adjudicating her waiver eligibility is not unreasonable. Cf. Didban, 2020 WL 224517, at *5 (assuming without deciding that "the Government's failure to issue a waiver decision is reviewable under the APA"); Yavari, 2019 WL 6720995, at *7 (assuming without deciding that "the State Department's failure to issue a decision in Plaintiff's waiver case can properly be considered under" the APA).

A six-factor balancing test governs whether agency action, like waiver-eligibility adjudication, has been unreasonably delayed. See Telecomm. Research & Action Ctr. v. FCC, 750 F.2d 70, 79–80 (D.C. Cir. 1984). Those factors are:

(1) The time agencies take to make decisions must be governed by a rule of reason;
(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'

In re People's Mojahedin Org. of Iran, 680 F.3d 832, 836–37 (D.C. Cir. 2012). Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Moreover, courts should "refuse[] to grant relief," even if all the TRAC factors point toward relief, "where 'a judicial order putting [the petitioner] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain'" and there is "no evidence the agency . . . treated the petitioner differently from anyone else." Id. at 1100 (quoting In re Barr Labs., Inc., 930 F.2d 72, 75 (D.C. Cir. 1991)).

Two other courts have recently determined that delays of similar lengths in the waiver-eligibility adjudication context are not unreasonable as a matter of law, given the "significant national security interests involved in assessing waiver applications and the compelling governmental interest in allowing the agency to balance its competing priorities as it sees fit." Didban, 2020 WL 224517, at *6 (two-year delay); see Yavari, 2019 WL 6720995, at *8 ("Because the period of the delay is the strongest factor, and slightly more than a year is drastically short of what constitutes an unreasonable delay in the Ninth Circuit, only very substantially longer delay could constitute sufficient factual allegations to implicate § 706(1)'s unreasonable delay . . . ."). An analysis of the TRAC factors as applied here leads this Court to the same conclusion—that the twenty-five-month delay at issue here is not unreasonable as a matter of law, given the circumstances.

The first two factors, relating to whether Congress has imposed a timeline for the agency action, heavily favor the government. There is no congressionally imposed timeline here. Indeed, "Congress has given the agencies wide discretion in the area of immigration processing," and a "delay of [two years] does not typically require judicial intervention." Skalka v. Kelly, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) (citing case law that even a five- to ten-year delay in the immigration context may be reasonable); see also Yavari, 2019 WL 6720995, at *8 (citing case law that "immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable"). Moreover, as the government points out, the twenty-five-month period that has elapsed so far since the government began assessing Abbasi's waiver eligibility in January 2018 "is far from 'extraordinary' when considering the national security interests implicated and the volume of applications being processed." Defs.' Mot. to Dismiss at 11; see id. at 3 ("[M]ore than 12,000 visa applicants have been found by a consular officer preliminarily to meet the first two conditions for a waiver and are now under review to determine whether they meet the national security and public safety criterion" (citing Dep't of State Report: Implementation of Presidential Proclamation 9645—December 8, 2017 to March 31, 2019 at 3)).

The third and fifth TRAC factors, relating to Abbasi's interests, health, and welfare, weigh in her favor. Her "health and welfare are at stake because the delay in adjudicating" her waiver eligibility has forced her "to endure a prolonged and indefinite separation" from her fiancé. Didban, 2020 WL 224517, at *6; see Compl. ¶¶ 35–38. The Court does not take lightly Abbasi and her fiancé's interest in marrying and living together in the United States, and it reminds the government that it must treat Abbasi's case with "the sense of urgency one would expect when familial interests are at stake." Skalka, 246 F. Supp. 3d at 154. However, the fourth TRAC factor,

relating to whether expediting action in this case would harm other agency activities of equal or greater priority, "surely has a mitigating effect on that sense of urgency here." Id. As the government has stated, at least 12,000 visa applicants are currently undergoing waiver-eligibility review. Gov't Mot. to Dismiss at 3. Abbasi has made no allegation that the government is treating her differently than any other visa applicant. Expediting review in Abbasi's case, then, would merely pull government resources from the adjudication of other applicants' waiver eligibility and direct those resources to Abbasi's case; in effect, putting her "at the head of the queue" and "mov[ing] all others back one space," producing "no net gain." In re Barr Labs., 930 F.2d at 75; see Skalka, 246 F. Supp. 3d at 154 (noting that courts step outside of their "limited role" where they require "agencies to invest the high degree of resources that would be necessary to accurately investigate plaintiffs' visa petitions," because such a requirement "would presumably delay other adjudications" and make others "suffer in response"). These sorts of judicial "reordering[s] [of] agency priorities" are inappropriate where "[t]he agency is in a unique—and authoritative— position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." In re Barr Labs, 930 F.2d at 76.

Upon consideration of each of these factors,[4] the Court holds that the government's twenty-five-month delay in adjudicating Abbasi's waiver eligibility is not unreasonable. While the Court urges the government to make a decision as to Abbasi's waiver eligibility as quickly as it can, the Court nonetheless concludes that the government's interests in balancing its own priorities and carefully vetting foreign nationals before admitting them to the country outweigh Abbasi's

---

[4] The sixth TRAC factor, relating to whether agency impropriety is behind the delay, is not relevant here: Abbasi does not allege that the government had improper motivations for delaying adjudication of her waiver eligibility.

interests in receiving an immediate decision on her waiver eligibility. Accordingly, Abbasi's APA claim fails as a matter of law.

### C. Mandamus Claim

Like her APA claim, Abbasi's mandamus claim revolves around the government's alleged "unreasonabl[e] delay" in adjudicating her waiver eligibility. Compl. ¶ 45. "The standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act . . . ." Skalka, 246 F. Supp. 3d at 152. In either circumstance, courts must look to whether "the agency has unreasonably delayed the contemplated action." In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (internal quotation marks omitted). Here, the Court has already determined under the APA that the twenty-five-month delay in adjudicating Abbasi's waiver eligibility is not unreasonable. This conclusion applies with equal force to Abbasi's mandamus claim. Moreover, the D.C. Circuit has instructed that courts should "reject[] mandamus claims that would have . . . the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants." Am. Hosp. Ass'n v. Burwell, 812 F.3d 183, 192 (D.C. Cir. 2016). As noted above, that is precisely the effect that directing the government to expedite review of Abbasi's waiver eligibility would have. Hence, Abbasi's mandamus claim also fails.

### III. Conclusion

For the foregoing reasons, the Court will grant the government's motion to dismiss. A separate order will be issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: February 11, 2020